[See Case No. 4,550.]

---

## Case No. 15,729.

### UNITED STATES v. MARTIN.

[1 Hask. 166.] [1]

District Court, D. Maine. June, 1868.

CUSTOMS DUTIES—SMUGGLING—AIDER—NEW TRIAL.

1. One aids in smuggling, who goes abroad with funds furnished by another to buy goods to be smuggled home, on buying the goods for the purpose and causing the same to be delivered to the carrier, who smuggles them into his country, even though such service be gratuitous.

2. A new trial will not be granted where substantial justice has been done, although some errors occurred at the trial.

Indictment, charging that the defendant [Alexander Martin] in violation of law did fraudulently and knowingly import and bring and assist in importing and bringing from a foreign port, St. Andrews, N. B., into Goulds-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

boro, Maine, 100 gallons of spirits without paying the duties thereon. The verdict was "Guilty," and the defendant moved for a new trial for misdirection and because the verdict was not supported by the evidence.

George F. Talbot, U. S. Dist. Atty.

Albert W. Bradbury and Bion Bradbury, for defendant.

FOX, District Judge. On the trial, the government offered evidence tending to prove that one Hardison, who owned a small boat, was hired at Gouldsboro by James McFarland to go in his boat to St. Andrews and smuggle into this country a quantity of liquors at a compensation of nine dollars per hundred dollars of value so smuggled; that Hardison went to St. Andrews, and there met the defendant, McFarland having agreed that he or the defendant would be at St. Andrews; that the defendant produced an order from McFarland for the liquors and obtained them from one Street, and afterwards returned to Gouldsboro with the bills, the liquors being smuggled into Gouldsboro.

The jury were instructed, "that if the defendant, as agent for McFarland and in his behalf, went from Gouldsboro to St. Andrews, carrying with him funds or credit for the purchase of the liquors of Street for McFarland, together with an order for the liquors from McFarland, and at St. Andrews met Hardison, who was without means or credit for the purchase, and depended therefor wholly on defendant, and the defendant there purchased the liquors and returned to Gouldsboro with the bills, knowing the liquors were to be smuggled, and they were so smuggled, they would be authorized to find the defendant guilty of assisting in bringing the liquors into this district in violation of law, and that it was not requisite that the defendant should receive any compensation or profit for so doing, or be in any way pecuniarily interested in the liquors; that he would be equally liable if these acts were done gratuitously and as mere neighborly kindness."

It is claimed that this instruction was erroneous; that such acts of the defendant did not constitute the offence of assisting McFarland in smuggling; that all the defendant did was in furtherance of a perfectly legitimate transaction in a sale of the liquors at St. Andrews by Street to McFarland, which there was valid and legal, the consideration for which the courts of the United States would aid Street to recover of McFarland, if the same was unpaid. Reliance is placed on Holman v. Johnson, 1 Cowp. 341, and other cases in which this authority is approved. Tracy v. Talmage, 14 N. Y. 162; 2 Kent, Comm. 467, and note. By that decision a foreign merchant was permitted to recover the price of goods sold in the foreign country, which the vendor knew were intended to be smuggled into England by the vendee.

In that case the plaintiff had not been guilty of any offence; he had done nothing in violation of the laws of England; he had made a complete and perfect sale of goods in good faith according to the lex loci; the title had passed, and the plaintiff had nothing further to do with them, had no further concern in the transaction, or in their disposition by the vendee. The contract being valid and obligatory where made. the court of king's bench enforced it, and compelled the vendee to perform his part by paying for the goods as he had agreed to do. The acts of the vendor were all consummated in the foreign country, and did not in any way or manner transcend or differ from a common and ordinary sale of goods, perfect and complete in itself, and having no bearing on the future conduct of the purchaser. The principle of that case has not always received the full sanction and approval of learned judges and authors who have examined it. Story, Confl. Law, §§ 249–255; Lightfoot v. Tenant, 1 Bos. & P. 551; Langton v. Hughes, 1 Maule & S. 593. It has however been acknowledged and fully recognized by Curtis, J., in Sortwell v. Hughes [Case No. 13,177], and is binding on this court; but without further comment, or doubting its correctness, it is sufficient to remark, that Holman v. Johnson, and all the other cases which adopt it, have recognized this plain and broad line of distinction, that if the vendor does anything himself to aid the vendee to violate the revenue laws, and this enters into the contract, it vitiates and avoids the bargain, and the courts of the country whose laws are so violated, will not aid in enforcing it. Biggs v. Lawrence, 3 Durn. & E. [Term R.] 454; Clugas v. Penaluna, 4 Durn. & E. [Term R.] 466; Waymell v. Reed, 5 Durn. & E. [Term R.] 599.

The present case, in my view, is wholly different from Holman v. Johnson, and the defendant does not, in any respect, stand on an equality with the vendor in that case; on the contrary, this defendant was an important, efficient, active participator in this transaction. aiding most effectually in accomplishing this smuggling operation; he is one of our own citizens, bound to know and obey our laws; he entered into an agreement with McFarland to go as his agent to St. Andrews, there to meet the carrier who was employed to smuggle the goods into this country; he takes with him the order for the liquors and the money or credit with which to procure them, and brings back the vouchers by which the cost of the goods can be ascertained and the profits determined; he, all the time, being fully aware that the goods were to be smuggled into this country.

If a compensation had been agreed upon for these services, and McFarland had afterwards declined to pay for them, could the defendant have maintained a suit in any court of justice in this country to recover for services rendered under such a contract?

Would it not have been a complete answer, that the proceeding was in violation of the laws of the United States, and that the purpose and object were in fraud of our revenue laws? All the acts of the defendant were in aid and furtherance of the illegal purpose of McFarland, under an arrangement entered into in this state, were begun here, partially executed at St. Andrews, finally completed and consummated by the defendant on his return to Gouldsboro, and by the landing of the goods in accordance with their illegal designs, the defendant thus undertakes to act as agent for McFarland, and to assist him in accomplishing his purpose to violate the laws of this country, and commit a fraud on the revenue. This agent travels scores of miles into a foreign jurisdiction, carrying with him in discharge of his agency the orders of his principal as to the kinds of goods to be purchased for smuggling and the funds with which they were to be obtained; he is sent there to meet the carrier, who was instructed that the principal or the defendant as his agent would be there; the carrier does meet defendant according to the plan, and through his means and by his aid the goods are procured, put on board the boat, and eventually smuggled into this district, as the defendant well knew was the purpose and object of all concerned when the articles were thus obtained by him. In my view this defendant and Hardison were equally liable; the assistance thus rendered by the defendant was as direct and efficient, and in aid of the transaction as anything could well be; it was a most important part of the operation, and without his aid and the services so rendered to McFarland the law would not have been violated.

A supercargo of a ship, who should go in her to Europe with written directions, and funds from his employer wherewith to purchase, in his behalf, a quantity of goods to be smuggled home on board the vessel, and who should comply with his instructions, might, with as good reason as the defendant, claim that he was not accountable for assisting his employer in violating the revenue laws by the importation of such goods, because he did not return with them in the ship. In each case, the party has done something toward helping on and facilitating the smuggling; he has directly aided and assisted his employer in accomplishing the violation of the law; and although in the present case, the evidence may have been sufficient to convict the defendant of the principal offence of smuggling, it is not less sufficient to authorize his conviction for aiding his principal in the commission of a like crime. The fact that the services may have been altogether gratuitous, without fee or reward, performed as a neighborly kindness by defendant whilst journeying eastwards, as alleged. to visit his wife, and that defendant was not to share in the gain,

or be interested in the goods themselves, would not afford him protection and immunity, or the sanction of the law to conduct, otherwise criminal.

On the hearing of the motion for a new trial, which had been delayed for nearly four months, it was claimed by counsel for defendant, that in addition to the foregoing instructions, the jury were also told that if they found that the defendant committed any act, without the commission of which act Hardison could not have successfully carried into effect the purpose of illegally bringing into the United States the merchandise described in the indictment, they would be authorized to find him guilty under the statute. I do not find upon my minutes of the charge the above extract; but as the counsel states that he reduced the same to writing at the time of the charge, and produces his original memorandum, from the respect and confidence the court entertain for the counsel, I shall recognize the same as having been so given, although I have not a distinct recollection of the remark.

It is conceded that the previous instruction was given, and followed by the above remark of a general character, and in deciding upon its materiality and correctness, it must be considered in connection with the preceding instructions, as well as the testimony given in the trial, which all came from Hardison, who certainly was not a swift witness for the government. The uncontradicted facts bearing against the defendant were few, but quite important, and were briefly, that Hardison was engaged by McFarland to go to St. Andrews and smuggle into Gouldsboro a boat load of liquors; that the defendant at McFarland's request went to St. Andrews from Gouldsboro with an order on Street, a liquor dealer there, for the liquors wanted; that he there met Hardison by agreement, procured the liquors of Street, they were put on board Hardison's boat, who had no means, or credit, or order, with which to obtain the goods, and were smuggled into this district; that defendant, returned home by way of Robbinstown where his wife was staying, and to meet whom was the alleged excuse for his journey eastward, and brought back with him to McFarland, Street's bills of the liquors. It was these acts of defendant in aid of Hardison to which this instruction had reference, as the jury must have understood; acts performed by the defendant gratuitously or otherwise as agent for McFarland, and for his benefit, and to aid him in a violation of the revenue laws; and the commission of any one of such acts, if the jury were satisfied that without its performance Hardison could not have succeeded in violating the law, as it seems to me, amounts to a rendering of assistance to Hardison in committing a fraud on the revenue, by importing, or bringing in the goods contrary

to the law. The materiality of such action, its necessary bearing upon the acts of Hardison, its importance, effect and moment in the accomplishing of the fraud by Hardison, are all made requisite by the instruction, if without it, Hardison had not the means and ability of doing the criminal act, and such means were procured by the defendant, so that thereby Hardison could and did commit the offence. It certainly seems as though the defendant had been of assistance to Hardison on this occasion, and had enabled him to violate the law. Hardison meets with an obstruction, an impediment which he cannot remove or surmount, at that moment, the defendant came to his relief, overcomes the difficulty and leaves the road open and free for Hardison to accomplish his designs. The instruction requires aid and assistance to such an extent, and of such a character, as to make that possible which otherwise was impossible.

By the rule of the supreme court as found in M'Lanahan v. Bogart, 1 Pet. [26 U. S.] 170, on motion for a new trial, if upon the whole case justice has been done, and the verdict is substantially right, no new trial should be granted though some mistake may have been made.

The mistakes are not apparent to me. I do not perceive anything erroneous in the instruction. The verdict was clearly right. Motion overruled.